FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 MAY 24  AM 7 41

STEPHAN HARRIS, CLERK
CHEYENNE

UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | |
|---|---|
| MICHAEL A. DURLACHER, DAVID L. DURLACHER, BARBARA BRODSKY, and RICHARD DURLACHER,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKY WAYNE HOFFSCHNEIDER, DR. MARK B. DOUTHIT, THE COMMUNITY HOSPITAL ASSOCIATION d.b.a. BOULDER COMMUNITY HOSPITAL, and JOHN DOES 1–10,<br><br>Defendants. | Case No. 12–CV–59–ABJ |

**OPINION AND ORDER GRANTING MARK DOUTHIT'S AND BOULDER COMMUNITY HOSPITAL'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

At a hospital in Boulder, Colorado, operated by Boulder Community Hospital, Dr. Mark Douthit performed surgery on Lindsey Durlacher to repair a broken sternum. But the surgery went horribly wrong and Mr. Durlacher died as a result. Members of Mr. Durlacher's family sued Dr. Douthit and the Hospital for wrongful death in this Court. Dr. Douthit and the Hospital have now moved the Court to dismiss them for lack of personal jurisdiction. Because the Court lacks personal jurisdiction over Dr. Douthit and the Hospital, the Court **GRANTS** their motions.

## FACTS

Lindsey Durlacher was injured while snowmobiling near Ryan Park, Wyoming, when Defendant Rocky Hoffschneider allegedly crashed his snowmobile into Mr. Durlacher's snowmobile. Mr. Durlacher suffered serious injuries in the collision, including a fractured sternum.

Almost four months later, Defendant Dr. Mark Douthit performed surgery on Mr. Durlacher to repair the fractured sternum. Dr. Douthit is a cardiothoracic surgeon licensed to practice medicine in Colorado. The surgery took place in Boulder, Colorado, at a hospital operated by Defendant Boulder Community Hospital (the Hospital).

Dr. Douthit attempted to repair the sternum using a Synthes plate, which is held in place by screws. But the screws Dr. Douthit used were too long. As a result, x-rays taken immediately after the surgery showed Mr. Durlacher's lungs were "minimally hypoventilated resulting in bronchovascular crowding," and that the screws "extended beyond the posterior cortex by .325mm, more than (6) six times the maximum limit warned against by the manufacturer." Am. Compl. ¶¶ 23–24, ECF No. 43. The day after surgery, x-rays showed "hypoventilation and worsening bilateral atelectasis." *Id.* ¶ 25. Not surprisingly, Mr. Durlacher complained of extensive pain after the surgery despite being medicated.

As time went on, the fluid in Mr. Durlacher's lungs got worse and his vital signs began to deteriorate. But the Hospital staff failed to check Mr. Durlacher's vital signs and discharged him the day after his surgery. About thirty-six hours later, Mr. Durlacher's mom, Plaintiff Barbara Brodsky, found her son dead in his apartment.

Plaintiffs Michael and David Durlacher are Mr. Durlacher's brothers. After Mr. Durlacher died, a Wyoming state district court appointed them as co-personal representatives for the purpose of prosecuting wrongful-death claims on behalf of Mr. Durlacher's beneficiaries. After the appointment, the brothers brought suit against Mr. Hoffschneider in this Court, asserting a wrongful-death claim and a survival action.

Later, the brothers amended their complaint, adding Ms. Brodsky and Richard Durlacher, Mr. Durlacher's dad, as plaintiffs. The amended complaint also named Dr. Douthit and the Hospital as defendants, asserting wrongful-death claims against them under Colorado's Wrongful Death Act.

Both Dr. Douthit and the Hospital have now filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(2), claiming that this Court lacks personal jurisdiction over them. Plaintiffs argue in response that whether the Court has personal jurisdiction over Dr. Douthit and the Hospital is irrelevant because the Court has supplemental jurisdiction over Plaintiffs' claims against them under 28 U.S.C. § 1367. In the alternative, and in the event of an adverse ruling on personal jurisdiction, Plaintiffs argue that the Court should transfer this action to the United States District Court for the District of Colorado under 28 U.S.C. § 1631.

The Court first will discuss the law governing personal jurisdiction. It will then apply that law to the facts here. After that, the Court will discuss whether this action should be transferred under § 1631. A brief conclusion follows.

## DISCUSSION

### I. The Law of Personal Jurisdiction

Generally, there are two limits on a federal court's ability to exercise personal jurisdiction over a nonresident defendant in a diversity action. *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). "First, a federal district court may only exercise personal jurisdiction over a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court sits." *Id.* Second, assuming the first requirement is met, the district court's exercise of personal jurisdiction must comport with constitutional due process demands. *Id.* This Court sits in Wyoming so it applies Wyoming law, which confers the maximum jurisdiction permissible consistent with the Due Process Clause. *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1070 (Wyo. 1982). Thus, whether this Court may exercise personal jurisdiction over a nonresident defendant in a diversity action collapses into a single due process analysis under the Constitution. *Holiday v. 3Com Corp.*, No. 00-CV-1034-B, 2000 WL 1796535, at *1 (D. Wyo. Dec. 1, 2000).

Personal jurisdiction comes in two flavors—general and specific. General jurisdiction refers to jurisdiction to "adjudicate a claim against the person, even when the claim is not related to the person's contacts with the forum state." *Black's Law Dictionary* 929 (9th ed. 2009); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). A court may exercise general jurisdiction over a defendant if the defendant consents to suit in the forum state, is served with process while physically present in the forum state, or is domiciled in the forum state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality opinion).

A court may also exercise general jurisdiction over a nonresident defendant whose contacts with the forum state are so continuous and systematic as to render the defendant essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

Specific jurisdiction on the other hand refers to jurisdiction "based on a person's minimum contacts with the forum state when the claim arises out of or is related to those contacts." *Black's Law Dictionary* 931 (9th ed. 2009). The Supreme Court has held that a court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brown*, 131 S. Ct. at 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). To satisfy the minimum-contacts test in the specific jurisdiction context, the defendant must have purposefully directed its activities at the forum state and the claim against the defendant must arise out of those activities. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006). Thus, in this sphere, "a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotation marks omitted).

While minimum contacts with the forum state are necessary for specific personal jurisdiction over a nonresident defendant, they are not always sufficient to sustain personal jurisdiction. Even if the defendant has minimum contacts, the court still must inquire whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial

justice." *Int'l Shoe*, 326 U.S. at 316; *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Several factors inform that inquiry, including:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080.

With these principles in mind, the Court now turns to their application in this case.

## II. Personal Jurisdiction over Dr. Douthit and the Hospital

This Court lacks personal jurisdiction over Dr. Douthit and the Hospital because they lack minimum contacts with Wyoming. Neither Dr. Douthit nor the Hospital has anything to do with Wyoming. *See* Douthit Aff. ¶¶ 1–8, ECF No. 48-1; Hospital Mot. 5–6, ECF No. 51; *cf. Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (concluding that Delaware court lacked personal jurisdiction over the defendants, in part, because they "had nothing to do with the State of Delaware"). The record does not reflect any purposeful activities directed at Wyoming by Dr. Douthit or the Hospital. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980) (concluding that Oklahoma court lacked personal jurisdiction over defendants, in part, because they "carr[ied] on no activity whatsoever in Oklahoma").

Dr. Douthit doesn't have an office in Wyoming, isn't employed by a Wyoming business, and doesn't own any part of a Wyoming business. Douthit Aff. ¶ 6, ECF No. 48-1; *cf. Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (concluding that Florida court lacked personal jurisdiction

over Delaware trust company, in part, because company did not have an office in Florida). Dr. Douthit does not practice medicine in Wyoming and is not licensed to do so. Douthit Aff. ¶ 5, ECF No. 48-1. He never has and does not now solicit business from Wyoming patients or healthcare providers. *Id.* ¶ 7; *cf. Hanson*, 357 U.S. at 251. Plaintiffs don't even allege that Dr. Douthit has ever set foot in Wyoming. *Cf. Shaffer*, 433 U.S. at 213.

Similarly, the Hospital is a Colorado corporation registered and authorized to do business in Colorado. It does not contract with Wyoming businesses or have agreements with Wyoming healthcare providers. It does not advertise in or solicit patients from Wyoming. Hospital Mot. 5–6, ECF No. 51.

Based on this absence of contacts between Dr. Douthit, the Hospital, and Wyoming, it comes as no surprise that Plaintiffs' claims against them don't arise out of their activities in Wyoming. Plaintiffs don't contend that Dr. Douthit or the Hospital injured Mr. Durlacher in Wyoming. *Cf. Kulko v. Superior Court*, 436 U.S. 84, 96–97 (1978) ("There is no claim that [defendant] has visited physical injury on either property or persons within the State of California."). Rather, their claims arise out of the surgery Dr. Douthit performed on Mr. Durlacher in Colorado and the care the Hospital provided to him in Colorado. *See* Am. Compl. ¶¶ 18–30, 53–59, ECF No. 43. Neither Dr. Douthit nor the Hospital had any control over Mr. Durlacher's alleged injury in Wyoming, and it's unlikely they would have expected that by operating on and treating Mr. Durlacher they were subjecting themselves to suit in any jurisdiction where Mr. Durlacher had been injured. *Cf. Rush v. Savchuk*, 444 U.S. 320, 329

(1980). As a result, neither Dr. Douthit nor the Hospital would have anticipated being haled into court in Wyoming. *Cf. World-Wide Volkswagen*, 444 U.S. at 297.

In short, Plaintiffs have failed to demonstrate that Dr. Douthit and the Hospital purposefully directed their activities at Wyoming. Plaintiffs also have failed to demonstrate that their claims against Dr. Douthit and the Hospital arise out of activity in Wyoming. Plaintiffs therefore flunk the minimum-contacts test for specific jurisdiction. Further, because the record reflects a virtual absence of contacts between Dr. Douthit, the Hospital, and Wyoming, it necessarily follows that those continuous and systematic contacts necessary for general personal jurisdiction are absent here as well. No other basis for general jurisdiction exists either—neither Dr. Douthit nor the Hospital has consented to suit in this Court or been served with process in Wyoming, and neither is a resident of Wyoming. Thus, because the Court cannot exercise specific or general jurisdiction over Dr. Douthit or the Hospital consistent with the demands of due process, it lacks personal jurisdiction over them.

Plaintiffs argue that the personal jurisdiction issue is irrelevant because the Court has supplemental jurisdiction over their claims against Dr. Douthit and the Hospital under 28 U.S.C. § 1367. This argument fails to recognize the important distinction between subject-matter and personal jurisdiction. As the Supreme Court has explained, subject-matter jurisdiction "is an Art. III as well as statutory requirement; it functions as a restriction on federal power." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). But "[n]one of this is true with respect to personal jurisdiction. The requirement that a court have personal jurisdiction

flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest." *Id.*

This distinction gives rise to a very important principle: A district court's judgment is invalid unless the court has *both* subject-matter jurisdiction *and* personal jurisdiction. *Id.* at 701; *see Burnham v. Superior Court*, 495 U.S. 604, 608–09 (1990) (plurality opinion) (stating that the judgment of a court lacking personal jurisdiction is void). Whether the Court may entertain Plaintiffs' claims against Dr. Douthit and the Hospital under § 1367 goes only to subject-matter jurisdiction, not personal jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–41 (2009) (supplemental jurisdiction relates to subject-matter jurisdiction).

Plaintiffs' argument gets things backwards. It's not that personal jurisdiction is irrelevant if the Court has subject-matter jurisdiction; it's that subject-matter jurisdiction is irrelevant if the Court lacks personal jurisdiction. Plaintiffs fail to recognize that a federal court needs both; having one but not the other doesn't cut it.

Plaintiffs also argue that the Court may exercise personal jurisdiction over Dr. Douthit and the Hospital under the pendant personal jurisdiction doctrine. They argue that, because the Court has personal jurisdiction over Mr. Hoffschneider, the Court can assert pendent personal jurisdiction over Dr. Douthit and the Hospital as their claims against them arise out of a common nucleus of operative fact. This argument reflects a misunderstanding of pendant personal jurisdiction.

"Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the

defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). But for pendant personal jurisdiction to apply, the court needs personal jurisdiction over each defendant on at least one claim. Here, the Court lacks personal jurisdiction over Plaintiffs' claims against Dr. Douthit and the Hospital. Thus, pendant personal jurisdiction doesn't work in this case and Plaintiffs' reliance on it is misplaced.

To sum up, because no basis exists for exercising specific or general jurisdiction over Dr. Douthit or the Hospital, the Court lacks personal jurisdiction over them. Plaintiffs' argument that personal jurisdiction is irrelevant reflects a thorough misunderstanding of the important distinction between subject-matter and personal jurisdiction. And Plaintiffs' argument that the Court may exercise pendent personal jurisdiction similarly reflects a misunderstanding of that doctrine.

### III. Transfer or Dismiss Without Prejudice?

Perhaps seeing the writing on the wall, Plaintiffs have asked the Court, in the event of an adverse ruling on personal jurisdiction, to transfer this action to the United States District Court for the District of Colorado under 28 U.S.C. § 1631. The Tenth Circuit has held that § 1631 is the proper vehicle for transferring an action when the district court lacks personal jurisdiction. *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987). That section provides that if a district court determines it lacks jurisdiction over a civil action, the court shall,

if it is in the interest of justice, transfer the action to any other such court in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631.

A court considers several factors when deciding whether a transfer is in the interest of justice. These factors include whether the claims would be time-barred if filed in the proper forum, whether the claims have merit, and whether it was clear at the time of filing that the court lacked the requisite jurisdiction. *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). Here, on balance, these factors align in favor of dismissal rather than transfer.

The first factor weighs against transfer. The Court can safely dismiss Plaintiffs' claims against Dr. Douthit and the Hospital because those claims are not yet time-barred in Colorado. Further, the Court recently held a status conference to inform Plaintiffs of the Court's ruling in this matter so that they can file their complaint in Colorado before the limitations period runs.

The second factor neither weighs in favor of nor against transfer. Generally, transfer is not in the interest of justice if, after sneaking a peek at the merits, the court concludes the claims lack merit such that transferring the action would serve only to waste judicial resources. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012). Here, the Court can't determine based on the record whether Plaintiffs' claims against Dr. Douthit and the Hospital have merit, so the second factor is a wash.

The third factor weighs against transfer. Plaintiffs should have known that this Court lacked personal jurisdiction over Dr. Douthit and the Hospital. Granted, issues of personal jurisdiction often are difficult. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070–71 (10th Cir. 2008). But here, the personal jurisdiction issue was straightforward.

Had Plaintiffs exercised reasonable diligence, they would have known this Court lacked personal jurisdiction over Dr. Douthit and the Hospital. *Cf. McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996) (affirming the district court's dismissal rather than transfer where it was clear the court could not exercise personal jurisdiction over the defendant).

In short, having considered the relevant factors, the Court concludes that transferring this action to the United States District Court for the District of Colorado under § 1631 would not be in the interest of justice.

## CONCLUSION

Because no basis exists for exercising specific or general jurisdiction over Dr. Douthit or the Hospital, the Court lacks personal jurisdiction over them. And transferring this action to the United States District Court for the District of Colorado under 28 U.S.C. § 1631 would not be in the interest of justice. The Court therefore **GRANTS** Dr. Douthit's and the Hospital's motions and **DISMISSES** Plaintiffs' claims against them **WITHOUT PREJUDICE**.

Dated this 23d day of May, 2013.

Alan B. Johnson
United States District Judge